# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DING GU,

          *Plaintiff*,

    v.

UNITED STATES DEPARTMENT OF
THE TREASURY, *et al.*,

          *Defendants*.

Civil Action No. 25 - 2739 (LLA)

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Ding Gu's petition for a writ of mandamus, ECF No. 1, and his motion for a temporary restraining order or preliminary injunction, ECF No. 2. Proceeding pro se, Dr. Gu brings this action against the U.S. Department of the Treasury, Secretary of the Treasury Scott Bessent, the U.S. Department of Commerce, and Secretary of Commerce Howard Lutnick (collectively, "Defendants"), ECF No. 1, alleging that Defendants have violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the First Amendment by denying him "the right to petition for the issuance, amendment, or repeal of a rule," *id.* § 553(e). Specifically, Dr. Gu asserts that he has advocated for his own trade-policy proposal for China, the "Balanced Free Trade Model with Quota System" ("BFT Model"), but that Defendants have not responded to his overtures. ECF No. 1, at 1. Defendants have filed a combined motion to dismiss the mandamus petition and opposition to the motion for a temporary restraining order or preliminary injunction. ECF Nos. 4, 5. Both motions are ripe, ECF Nos. 2, 4, 5, 9, 12, 14, 16, and Dr. Gu has filed several other motions and notices, ECF Nos. 17 to 22, 24. For the following reasons, the court will grant Defendants' motion to dismiss Dr. Gu's mandamus petition for lack

of jurisdiction and deny his motion for a temporary restraining order or preliminary injunction and his other motions as moot.

## I.    FACTUAL BACKGROUND

The court accepts the following factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dr. Gu is an "independent researcher" and proponent of a "BFT Model" of free trade. ECF No. 1, at 1; ECF No. 1-1, at 4.[1]  In October 2024, he sent several letters containing "policy proposals" to now-President Donald Trump's personal residence in Palm Beach, Florida. ECF No. 1-1, at 47. His letters included "proposals on the Big Nation Economy, a strategic resolution to the Russia-Ukraine war," and his BFT Model. *Id.* Dr. Gu believes that the BFT Model offers an "alternative to the current tariff model" that will better address certain policy goals like reducing trade deficits and inflation risk. ECF No. 1, at 1. In his proposal, he explains his model, provides "[c]ase [s]tudies" applying the model to existing global trade data, lists the model's "[s]trategic [b]enefits," and concludes that his model offers a better policy choice than traditional tariffs. ECF No. 1-1, at 3-10. Dr. Gu did not receive a reply to his letters. ECF No. 1, at 3-4.

In July 2025, Dr. Gu began "[d]irect[ing] communications" about his proposed trade model to Secretaries Bessent and Lutnick. ECF No. 1, at 1; *see* ECF No. 1-1, at 53-61. For several days, he "stood in front of the White House distributing petitions and flyers . . . to the public and to federal officials." ECF No. 1, at 4. In a letter to Secretary Bessent, Dr. Gu enclosed "a public challenge letter and policy flyer." ECF No. 1-1, at 54. He requested that Secretary Bessent engage in a "nationally televised debate on America's trade strategy and economic direction" and included

---

[1] When citing ECF Nos. 1-1, 14, and 24, the court uses the page numbers generated by CM/ECF, rather than the document's internal pagination.

a QR code to access his "full proposal." *Id*. at 56 (emphasis omitted). Dr. Gu also sent a letter to Secretary Lutnick asking "whether the Department of Commerce would consider reviewing [his] model independently and offering a position—either publicly or through recommendation to the President." *Id.* at 59. In August, Dr. Gu followed up with both Secretaries to "request an emergency 30-minute meeting with [them] or [their] senior trade policy staff to present [his] findings and data on the BFT Model." *Id.* at 61 (emphasis omitted). Having received no reply, he filed this suit.

## II.    PROCEDURAL HISTORY

In August 2025, Dr. Gu filed a mandamus petition, ECF No. 1, and a motion for a temporary restraining order or preliminary injunction, ECF No. 2. Defendants filed a combined motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and an opposition to his request for preliminary relief. ECF Nos. 4, 5. Because Dr. Gu is proceeding pro se, the court issued a *Fox*/*Neal* order directing him to respond to the motion to dismiss and advising him of the consequences of failing to do so. ECF No. 6. The parties have since completed briefing on the matter. ECF Nos. 9, 12, 14, 16.

In September, in response to Defendants' argument that Dr. Gu lacks standing, ECF No. 4, at 4-6, the court ordered Defendants to file a notice "detailing how Mr. Gu could submit" a petition to the relevant agency or agencies, Sep. 11, 2025 Minute Order, and Defendants timely responded, ECF No. 23. Dr. Gu has also filed several additional motions and notices, including a notice opposing delay caused by waiting for Defendants' response to the court's order, ECF No. 17; a notice of "[u]rgency," ECF No. 18; a supplemental emergency motion, ECF No. 19; an unrelated notice of his policy proposals regarding TikTok, ECF No. 20; a notice that he was seeking a writ

of mandamus from the U.S. Court of Appeals for the D.C. Circuit, ECF No. 21; a request for an immediate ruling, ECF No. 22; and a motion to expedite, ECF No. 24.

### III.    LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Complaints filed by pro se litigants are generally held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). This liberal construction for pro se plaintiffs "is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009). Thus, "even a pro se plaintiff must meet his burden of proving subject matter jurisdiction to survive a Rule 12(b)(1) motion to dismiss." *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014).

4

## IV.    DISCUSSION

### A.    Article III Standing

Defendants argue that the court must dismiss Dr. Gu's case under Federal Rule of Civil Procedure 12(b)(1) because Dr. Gu has failed to allege sufficient facts to establish standing. ECF No. 4, at 4-6. Article III standing is comprised of three elements: "(1) the plaintiff must have suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) there must exist 'a causal connection between the injury and the conduct complained of'; and (3) it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 991-92 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Dr. Gu alleges three injuries: (1) a "[p]rocedural injury" derived from his right to petition an agency "for the issuance, amendment, or repeal of a rule" under 5 U.S.C. § 553(e); (2) an "[i]nformational injury" because agencies "must provide a statement of reasons when denying petitions"; and (3) a "[c]oncrete economic injury" because he "pays higher prices caused by tariffs," "incurred over $10,000 in personal expenses printing traveling, and delivering his petition, and declined a fee waiver at filing." ECF No. 12, at 2-3. Defendants argue none of these allegations suffices to establish Article III standing. The court agrees.

First, Dr. Gu argues that the APA's guarantee that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule," 5 U.S.C. § 553(e), independently gives him standing to challenge the "denial" of his petition, ECF No. 12, at 2. This argument fails because "[t]he fact that Congress may have given all interested parties the right to petition the agency does not in turn 'automatic[ally]' confer Article III standing when that right is deprived." *Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 433 (D.C. Cir. 2002) (alteration in

original) (quoting *Fund Democracy, LLC v. Sec. & Exch. Comm'n*, 278 F.3d 21, 27-28 (D.C. Cir. 2002)).  Rather, a plaintiff must still demonstrate a "concrete interest apart from the procedural injury."  *Fund Democracy, LLC*, 278 F.3d at 28; *see Lujan*, 504 U.S. at 573 & n.8 (holding that a plaintiff could sue to enforce a procedural requirement only if "the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing").  Dr. Gu's claimed procedural injury—standing alone—is thus insufficient to confer Article III standing.  What is more, Dr. Gu does not plausibly allege that he properly submitted a petition and that it was denied.  Rather, the core premise of the case is that he has repeatedly tried to communicate with Executive Branch officials but has not received a response, *see* ECF Nos. 1, 2, and the relief he seeks is for Defendants to respond to him, ECF No. 1, at 4-5.  In response to the court's order, Defendants have explained how Dr. Gu may properly submit a petition under Section 553(e).  ECF No. 23.  Dr. Gu states in his most recent filing that he has now petitioned for rulemaking, *see* ECF No. 24, but he does not allege that Defendants have denied those petitions.

Next, Dr. Gu claims to have suffered an "[i]nformational injury."  ECF No. 12, at 2.  He asserts that because 5 U.S.C. § 555(e) requires agencies to "provide a statement of reasons" for denying a petition, "[t]heir silence violates this right."  ECF No. 12, at 2.  This claim misunderstands the nature of an informational injury, which requires a plaintiff to allege that "(1) [he] has been deprived of information that, on [his] interpretation, a statute requires the government or a third party to disclose to [him], and (2) [he] suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure."  *Jewell*, 828 F.3d at 992.  Dr. Gu does not bring this suit seeking access to information held by Defendants.  Instead, he asks this court to compel Defendants to listen and respond to him.  *See* ECF No. 1, at 5 (requesting that the court require Defendants to "schedule and conduct a formal meeting, hearing,

or consulting with Plaintiff" and provide a "substantive response" to his proposal (emphasis omitted)).

The two cases on which Dr. Gu relies only confirm that he fails to allege an informational injury. *See* ECF No. 12, at 2 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998); then citing *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440 (1989)). In *Akins*, the Court held that the plaintiffs had established an Article III injury where they were deprived of information that, in their view, the government was statutorily required to maintain. 524 U.S. at 24-25. Similarly, in *Public Citizen*, the court held that the plaintiffs had alleged a sufficiently concrete and specific injury where they sought, but were denied access to, certain records in the possession of a Federal Advisory Committee. 491 U.S. at 447-51. In both cases, the plaintiffs' goal was to obtain information held by the defendants. Here, because Dr. Gu has not requested information *from* Defendants, but instead an audience *with* Defendants, he cannot establish an informational injury.

Finally, Dr. Gu alleges what he believes to be a series of "[c]oncrete economic injur[ies]." ECF No. 12, at 2-3. As a "consumer and small-business operator," Dr. Gu claims that he "pays higher prices caused by tariffs." *Id.* at 2. But "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individualized way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). Dr. Gu's briefing makes clear that his concerns about price increases are generalized, not particularized. He claims that the current tariffs have adversely shifted macroeconomic figures such as the Producer Price Index, ECF No. 1, at 3; created "chaos and uncertainty for industries and consumers," ECF No. 12, at 4-5; and generally "harm[ed] Americans," *id.* at 5. If this logic were sufficient to confer Article III standing, then any market participant could challenge any policy that has macroeconomic effects. But it is well established that "a 'generalized grievance,' no matter how sincere, is insufficient to confer standing."

*Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013); *see Alter v. U.S. Dep't of Gov't Efficiency*, No. 25-CV-1162, 2025 WL 1279354, at *2 (D.D.C. May 3), *aff'd*, No. 25-5172, 2025 WL 2463705 (D.C. Cir. Aug. 27, 2025). Dr. Gu's claimed injury lacks the requisite particularity to establish Article III standing.

But even if Dr. Gu's alleged economic injury were sufficiently particularized, Dr. Gu fails to demonstrate that the injury he suffers is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court" or that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560 (alterations in original) (internal citations omitted) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 41-43 (1976)). Here, Dr. Gu does not request relief that would eliminate the tariffs. Indeed, he admits that he does not request the court to "bind" Defendants "substantively," but instead asks the court only to require Defendants to listen to his presentation and provide feedback on his favored trade model. ECF No. 14, at 5, *see* ECF No. 1, at 4-5. Such relief, however, would not redress his alleged economic injury. And while Dr. Gu asserts that "[r]edressability is met . . . [because] ordering agencies to act . . . will reduce [his] prospects of avoiding ongoing harm," ECF No. 12, at 3, this is a bare conclusory statement which does not suffice at the motion-to-dismiss stage, *see Iqbal*, 556 U.S. at 678.

Finally, Dr. Gu alleges that he has "incurred over $10,000 in personal expenses printing, traveling, and delivering his petition, and declined a fee waiver at filing despite modest 2024 income of $16,550." ECF No. 12, at 2-3. Defendants respond that these claimed injuries are self-inflicted because Dr. Gu "has not alleged that Defendants forced him to expend any funds or decline any fee waivers." ECF No. 16, at 3. The court agrees. "[I]t is well-settled in this

jurisdiction that self-inflicted injuries—injuries that are substantially caused by the plaintiff's own conduct—sever the causal nexus needed to establish standing." *Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325, 336 (D.D.C. 2014), *aff'd*, 622 F. App'x 2 (D.C. Cir. Nov. 20, 2015).  The costs that Dr. Gu elected to incur in "printing, petition board preparation, mailings, travel, and nationwide distribution" of his policy proposal, ECF No. 12, at 3, are attributable to his own choices and are thus "not fairly traceable" to Defendants' alleged wrongdoing, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).  The same is true of his choice not to pursue a fee waiver when filing suit.  Because Dr. Gu fails to show that Defendants caused these economic injuries, he cannot establish Article III standing.  The court must dismiss his claims for lack of subject-matter jurisdiction.

### B.    Mandamus Jurisdiction

The parties also dispute whether the court may exercise mandamus jurisdiction over Dr. Gu's claims under 28 U.S.C. § 1361.  In light of the court's conclusion that Dr. Gu has failed to establish Article III standing, it is not strictly necessary for the court to address this jurisdictional argument.  But because the court's consideration of its mandamus jurisdiction flows naturally from its conclusion that Dr. Gu lacks Article III standing, the court can easily conclude that it lacks mandamus jurisdiction as well.

A writ of mandamus "compel[s] an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "[M]andamus is drastic; it is available only in extraordinary situations."  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (internal quotation marks omitted).  "The necessary prerequisites for [the] court to exercise its mandamus jurisdiction are that '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff.'"  *Kemp v.*

*Rice*, No. 06-CV-1528, 2007 WL 1463859, at *1 (D.D.C. May 17, 2007) (alteration in original) (quoting *Swan v. Clinton*, 100 F.3d 973, 977 n.1 (D.C. Cir. 1996)).  Even if a plaintiff can establish these three prerequisites, the decision whether to grant mandamus lies within the court's discretion. *In re Cheney*, 406 F.3d at 729.

Dr. Gu argues that mandamus is available because "Defendants have a clear, nondiscretionary duty to respond to a valid petition for rulemaking." ECF No. 1, at 4.  As support, he cites 5 U.S.C. § 553(e), which provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."  Defendants counter that Dr. Gu's letters are not valid petitions under Section 553(e) and that, "even if his letters were construed as valid petitions," Dr. Gu has not shown that Defendants have "any specific, nondiscretionary duty" to respond.  ECF No. 4, at 8-9.[2]  The court again agrees with Defendants.

"The 'clear and indisputable right to relief' and 'clear duty to act' standards are equally stringent." *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023).  A plaintiff must show that "the challenged action is 'plainly and palpably wrong as [a] matter of law,'" *id.* at 714 (alteration in original) (quoting *U.S. ex rel. Chi. Great W. R.R. Co. v. Interstate Com. Comm'n*, 294 U.S. 50, 61 (1935)), and that "[t]he law . . . not only authorize[s] the demanded action, but require[s] it," *id.* at 715 (alteration in original) (quoting *U.S. ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931)).  On his theory, to meet either of these standards, Dr. Gu must first establish that he

---

[2] Defendants frame their mandamus argument as a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), ECF No. 4, at 8-9, but the "'distinction between the jurisdictional inquiry and the equitable merits inquiry'—*i.e.*, the difference between whether mandamus '*could*' issue and 'whether mandamus *should* issue,'—is an important one," *Taj v. U.S. Dep't of State*, No. 22-CV-1087, 2022 WL 17250302, at *3 (D.D.C. Nov. 28, 2022).  Because the court has an independent obligation to assess its own jurisdiction, it must decide whether it can exercise mandamus jurisdiction at all before assessing whether Dr. Gu has stated a claim under Rule 12(b)(6).  *Id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

submitted a proper petition for rulemaking.  He asserts that his paper about the BFT Model is a

"formal policy petition," ECF No. 1, at 1; *see* ECF No. 1-1, at 4, but nothing about this submission

indicates that it is a petition for rulemaking or identifies what specific rule Dr. Gu wants issued,

amended, or repealed.  Instead, his proposal reads like a research paper or report—including an

abstract, an explanation of the model, case studies, and a comparison between the BFT Model and

tariffs.  *See* ECF No. 1-1, at 4-11.  Further, it is unclear whether Dr. Gu actually delivered that

alleged petition to any Defendant.  Dr. Gu alleges that he sent letters to President Trump,

Secretary Bessent, and Secretary Lutnick, *see* ECF No. 1-1, at 53-61, but none of those letters

appears to be a petition for rulemaking.  Indeed, Dr. Gu's letter to Secretary Bessent describes its

enclosed materials as a "public challenge letter and policy flyer." *Id.* at 54.  The "public challenge"

does not mention a petition either—it instead "challenge[s]" Secretary Bessent to "A Televised

Debate on the Future of U.S. Trade Policy" and includes a QR code with Dr. Gu's policy proposal.

*Id.* at 56.  Dr. Gu's letter to Secretary Lutnick asks the Department of Commerce to "consider

reviewing [his] model independently and offering a position—either publicly or through

recommendation to the President" in the event that Secretary Bessent declines to participate in the

challenge.  *Id*. at 58-59.  In none of these communications does Dr. Gu clearly "petition for the

issuance, amendment, or repeal of a rule."  5 U.S.C. § 553(e).[3]  Accordingly, because Dr. Gu has

failed to establish that he has a "clear right to relief" or that Defendants have a "clear duty to act,"

this court lacks mandamus jurisdiction.

---

[3] In Dr. Gu's most recent supplemental filing, he states that he has filed petitions for rulemaking with Defendants on October 9, 2025.  *See* ECF No. 24, at 2.  If Dr. Gu eventually seeks to challenge the result of those petitions, he may bring a new suit to do so.

### C.    Dr. Gu's Remaining Motions

Dr. Gu's other filings before this court include a notice opposing delay caused by waiting for Defendants' response to the court's order, ECF No. 17; a notice of "[u]rgency," ECF No. 18; a supplemental emergency motion," ECF No. 19; an unrelated notice of his policy proposals regarding TikTok, ECF No. 20; a notice that he was seeking a writ of mandamus from the U.S. Court of Appeals for the D.C. Circuit, ECF No. 21; a request for an immediate ruling, ECF No. 22; and a motion to expedite, ECF No. 24.  Because the court is dismissing Dr. Gu's case for lack of subject-matter jurisdiction, each of these motions is moot.  The court will accordingly deny each of these motions.

### V.    CONCLUSION

For the foregoing reasons, the court will grant Defendants' motion to dismiss, ECF No. 4, and deny Dr. Gu's motion for a temporary restraining order or a preliminary injunction, ECF No. 2, and his remaining motions, ECF Nos. 19, 22, 24, as moot.  A contemporaneous order will issue.

_____

LOREN L. ALIKHAN
United States District Judge

Date:   November 5, 2025

12